### 18219

Johnny CONNER, Respondent, v. CONWAY GLASS AND PAINT COMPANY, and/or Hardee Construction Company, Pennsylvania Threshermen and Farmers Mutual Insurance Company, of whom Hardee Construction Company, Pennsylvania Thresherman and Farmers Mutual Insurance Company are Appellants.

(136 S. E. (2d) 772)

*Messrs. Burroughs & Green,* of Conway, *for Appellants,*

*O. A. Rankin, Esq.,* of Conway, *for Respondent.*

June 1, 1964.

BRAILSFORD, Justice.

This is a Workmen's Compensation case in which Johnny Conner, who was injured while on the job as an employee of Conway Glass and Paint Company claims compensation for his injuries against Hardee Construction Company. The claim is made under Section 72-112 and the issue of fact, which the S. C. Industrial Commission resolved in claimant's favor, was whether Hardee Construction Company was general contractor and Conway Glass and Paint Company subcontractor with respect to the job on which plaintiff was injured. The circuit court affirmed the finding of the Commission and this appeal followed. The sole question raised by the exceptions is whether the factual finding in favor of coverage is reasonably supported by the evidence.

The work in question was the repair and remodeling of a store building belonging to the estate of H. W. Tallevast at Myrtle Beach, South Carolina. Preliminarily, the building was inspected by Lee Rowman, a new lessee, Foster Smith, one of the executors of the Tallevast will, and John Junkins, an officer of the Hardee Construction Company. Rowan and Junkins agreed upon certain changes in the building that Hardee Construction Company would make for Rowan's convenience and at his expense. In addition, certain repairs to be done at the expense of the estate were agreed upon. Mr. Smith, who was in charge of the project for the estate, made up a list of these items, which the parties treated as an accepted work order, including, "Replace wood under plate glass and paint." This was made necessary by the deterioration of the wood from rot and termite infestation. In order to accomplish this work, it

was, of course, necessary to remove the plate glass and then replace it. Claimant was injured while he and other employees of the glass company were removing a section of this plate glass. Although this was a part of the work which the construction company had contracted to do for the Tallevast estate, both Junkins and A. D. Hinson, president of the glass company, denied that the work was being done at the instance of the construction company. However, neither offered any satisfactory explanation as to how the services of the glass company were arranged for except by contracts between Junkins and Hinson.

The latter testified rather unconvincingly that he made an oral contract with Mrs. Hope Stalvey, another of the executors, to handle the glass on this job. Quoting from his testimony:

"Q. What was your contract with Mrs. Hope Stalvey at that time? What was your contract with her to do?

"A. She said she rented or leased this building and that the wood work was rotten in it and wanted to know what to do. And *this was approximately one month before this accident* and I told her we couldn't do the wood work. We would take the glass out and she would have to get a carpenter or somebody to do that so later on *I found out* she had hired Hardee Construction Company."

.  *  *  *

"Q. How did you learn Hardee Construction Company was going to do the wood work? *From whom did you learn that?*

"A. *I don't remember if it was John Junkins or George Hardee that I talked to.* I don't remember which one. They asked me if I had talked to her about it. I said, 'Yes.' *We agreed* to go over there and remove the glass on this particular day." *

*  *  *

---

* Punctuation and capitalization corrected.

"Q. Who hired you?

"A. I thought I was doing the work for Mrs. Hope Stalvey."

Now, from the cross examination: .

"Q. When you put the glass in on May 26, *who told you to put it in?*

"A. Nobody.

"Q. *How did you know to put it in?*

"A. *I go by Mr. Hardee's office regularly."*

In lieu of their taking the stand, statements by Mrs. Stalvey and Mr. Smith, were received in evidence. Mrs. Stalvey stated that *"Mr. Foster Smith contracted with Mr. John Junkins of Hardee Construction Company for our part of the work* which included the repair of the wooden framing around the plate glass windows which had rotted and had become infested with termites.

"In order to repair the wooden frame work, it was necessary to remove the plate glass windows and then put them back." She further stated that she had no recollection of having engaged Hinson to do any work on this building. However, she would not deny having done so.

Mr. Smith stated that in addition to changes in building for the convenience of the tenant "there was other work that needed to be done that I felt was part of the upkeep of the building and I conferred with Mr. John Junkins of Hardee Construction Company about this additional work and *authorized Mr. Junkins to do this work or have it done.* * * * I did not authorize Conway Glass Company to do this work and have no idea as to who did authorize them to do the work. * * * All of my dealings were with Mr. Junkins of Hardee Construction Company."

Before the work was begun, consideration was given to replacing a part of the wooden framing with a brick wall. Mr. Junkins testified that, at Mr. Smith's request, he estimated the cost of each of the two types of construction. At that time he obtained an estimate from Hinson as to the

cost of handling the glass and he sought an estimate from another glass company.

Junkins disclaimed any responsibility on the part of the construction company for removing the glass, but he did not explain how this necessary procedure was excepted from the contract which he made with Mr. Smith. As to how the glass company came to undertake the work, he testified:

"Q. And you went to another glass company? Which one did you go to?

"A. I called them.

"Q. Which one?

"A. The Coastal Glass.

"Q. Do you know what their estimate was?

"A. They never came to check the building.

"Q. Did you then contact Conway Glass?

"A. No.

"Q. Did Mr. Hinson contact you?

"A. I am not sure if it was Mr. Hinson or Mr. Stanley working for Mr. Hinson at that time.

"Q. So the job that Conway Glass and Paint Company did on this particular job was done through Hardee Construction Company, was it not, because you had responsibility of seeing it was done, is that correct?

"A. No. When Mr. Hinson came over he told me he did work for the Tallevasts and these people had contacted him and *if it was all right with me, he would go ahead and do the work.*

"Q. If it was all right with you, he would go ahead and do the work?

"A. Yes.

"Q. You are a partner of Hardee Construction Company of Myrtle Beach?

"A. Yes.

"Q. You, of course, gave him your consent to do the work?

"A. Yes."

Appellants emphasize the fact that the glass company billed the Tallevast estate for its work and was paid directly by the estate. However, this was done after claimant's accidental injury and is not controlling. We think it more significant that the removal and replacement of the plate glass was part of the work which the construction company undertook to do for the Tallevast estate. The circuit court's finding to this effect is fully supported by the evidence and was not excepted to. It raises a strong inference that the glass company performed the work as subcontractor. We agree with the conclusion below that the evidence which disputes the existence of this relationship does not overcome this natural inference.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.