0531

Lester Clay MURRAY, Respondent, v. AARON MIZELL TRUCKING COM-PANY, sub-contractor to Dean-Dempsey Lumber Company, and Aaron Mizell Trucking Company, sub-contractor for Roy Davis and Southeastern Lumber Manufacturers Fund and/or Palmetto Timber Self-Insured Fund, of whom Roy Davis and Palmetto Timber Self-Insured Fund are Appellants. Appeal of Roy DAVIS and Palmetto Timber Self-Insured Fund.

(334 S. E. (2d) 128)

Court of Appeals

*Charles E. Carpenter, Jr.,* and *W. Hugh McAngus,* of *Richardson, Plowden, Grier & Houser,* Columbia, *for appellants.*

*Gene W. Dukes,* St. George, *for respondent.*

*Ernest J. Nauful, Jr.,* of *Nauful & Ellis,* Columbia, *for respondent Southeastern Lumber Manufacturers Fund.*

Heard May 22, 1985.

Decided Aug. 5, 1985.

CURETON, Judge:

The respondent Lester Clay Murray suffered an accidental injury when logs fell from a truck operated by him. The sole issue presented in this appeal is whether Murray is the statutory employee of appellant Roy Davis or of respondent Dean-Dempsey Lumber Company for purposes of workers' compensation. The single Commissioner, Full Commission and circuit court determined that he was the statutory employee of Roy Davis. Davis and his insurance carrier Palmetto Timber Self-Insured Fund appeal. We affirm.

Dean-Dempsey Lumber Company (Dempsey) is a lumber manufacturing company. It contracted with Davis as a contract logger[1] to cut and haul timber to its plant. Prior to the injury in question, Dempsey hired Aaron Mizell as a contract hauler.[2] Mizell in turn hired Murray to drive his truck. On the date of the accident, Murray was sent to haul timber for Davis whose truck was inoperable. The arrangement between Dempsey and Davis was that when Davis needed help with getting timber to Dempsey's plant, Davis would contact Dempsey and Dempsey would send a hauler, such as Mizell, to transport the timber. The hauler would be compensated by Dempsey's withholding from the monies due Davis a sum to pay the hauler which sum Dempsey turned over to the hauler.

On the date of the injury, Murray drove Mizell's truck to Davis's work site; Davis loaded the truck with timber and Murray proceeded to deliver the timber to Dempsey's plant.

---

[1] A contract logger, as here used, is an independent contractor who contracts with Dempsey to cut and deliver a certain quantity of timber to Dempsey's plant. A contract logger is paid based upon the amount of timber delivered to the plant.

[2] A contract hauler, as here used, is an independent contractor who contracts with Dempsey to haul timber based on the miles the timber is to be hauled. Mizell hauled timber that Dempsey cut itself and also timber cut by loggers that Dempsey had contracted with. When Mizell hauled for loggers to Dempsey's plant, Dempsey deducted from the loggers' earnings Mizell's fee of $1.00 per mile and disbursed it to Mizell.

Once at the plant, a log fell from the truck and injured Murray. Mizell had no worker's compensation coverage. Murray filed a claim for worker's compensation with Dempsey. Dempsey denied the claim on the ground that Murray was not its employee.

An award under our Workers' Compensation Act will not be made unless an employment relationship existed at the time of the alleged injury for which the claim is made. *McLeod v. Piggly Wiggly Carolina Company*, 280 S. C. 466, 313 S. E. (2d) 38 (Ct. App. 1984). The determination of the relationship of employer-employee is jurisdictional and review by this Court in such cases is governed by the preponderance of the evidence rule. *McLeod v. Piggly Wiggly Carolina Co., supra.*

The Commission held that there was an implied agreement between Mizell and Davis that Mizell would haul timber for Davis and that Mizell was the subcontractor of Davis on the day of the injury. The Commission further held that Murray therefore was the statutory employee of Davis under provisions of S. C. Code Ann. Section 42-1-400. We agree. Section 42-1-400 reads:

> When any person, in this section and sections 42-1-420 and 42-1-430 referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and sections 42-1-420 to 42-1-450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if that workman had been immediately employed by him.

The term "owner" as used in Section 42-1-400 is synonymous with "principal contractor." *Marchbanks v. Duke Power Company,* 190 S. C. 336, 2 S. E. (2d) 825 (1939). This Section provides that any contractor for whom a subcontractor undertakes to perform a part of the contractor's trade, business or occupation, shall be liable to pay to an injured employee of the subcontractor engaged in the principal con-

tractor's work, worker's compensation in the same manner as if the employee had been employed by the principal contractor. *Chavis v. E. I. Du Pont De Nemours,* 283 F. (2d) 929 (4th Cir. 1960). This is true even though the employee's immediate employer is also an independent contractor. *Corollo v. S. S. Kresge Company,* 456 F. (2d) 306 (4th Cir. 1972).

As pertains to the question of whether Mizell was, on the date of the injury, a subcontractor of Davis, we find from a preponderance of the evidence that Davis had a contract with Dempsey to cut and haul the timber from a certain tract of land to Dempsey's plant. Dempsey in turn had an arrangement with Mizell whereby he was paid $1.00 per mile to deliver timber to its plant. As a convenience to Davis and at his request, Dempsey arranged with Mizell to haul for Davis. The usual procedure for obtaining a hauler was for Davis to call Dempsey and request one. If Dempsey located a hauler, not otherwise engaged in hauling timber, it directed the hauler, here Mizell, to haul for Davis.

Davis argues first that there is no evidence that Murray was his employee and cites the case of *Chavis v. Watkins,* 256 S. C. 30, 180 S. E. (2d) 648 (1971) for the four tests that ordinarily establish the employment relationship.[3] *Chavis* is inapposite to the facts of this case. Clearly, Murray was the employee of Mizell. The sole issue, as we see it, is whether there was an actual or implied contract between Davis and Mizell that Mizell would haul for Davis. If so, the statute would make Murray the statutory employee of Davis.

Davis argues that there is no evidence that there was a contractual relationship between Mizell and himself. He notes four points to support this argument: (1) Mizell was under contract with Dempsey to haul timber, (2) Dempsey could fire Mizell, but he could not, (3) Dempsey paid Mizell, and (4) Mizell used Dempsey's equipment. We are unconvinced by this argument. At the outset we are confronted with the question of what is a subcontractor. A succinct definition is that a subcontractor is an independent contractor contracting with the contractor to do part of the work which the contractor has previously agreed to perform. *Miller v. Cornell-Young Co.,* 171 S. C. 228, 171 S. E. 790

---

[3] These tests are: (1) direct evidence of right to or exercise of control, (2) method of payment, (3) furnishing of equipment and (4) right to hire....

(1933); *see* 40 Words and Phrases *Subcontractors* 121 (Cum Supp. 1984) for numerous similar definitions.

In the instant case Davis's contract with Dempsey required him to deliver the timber to Dempsey's plant. Transporting timber was an integral part of Davis's trade, business or occupation. Davis's own truck was inoperable and he needed a hauler. But for the latter fact, Davis's own driver would have used Davis's truck to haul the same timber that Mizell hauled to Dempsey's plant. Manifestly, Mizell was performing work that Davis was obligated to perform for Dempsey. The fact that Davis did not call Mizell directly and request his services is not controlling. *Conner v. Conway Glass and Paint Company*, 244 S. C. 294, 136 S. E. (2d) 772 (1964).

It is evident that Dempsey's arranging for Mizell to haul for Davis was simply a matter of convenience. Dempsey had little actual control over Mizell except to direct him where to go to pick up timber to haul.[4] Dempsey's payment of Mizell for hauling for Davis came from Davis's gross earnings and, like several other deductions from Davis's gross earnings, was performed as a convenience to him[5] and to insure that a hauler did not have to track down several loggers each week for hauling fees.

Under the facts of this case, we think that the evidence is sufficient to show an implied contract between Davis and Mizell. Whenever services are rendered and received, a contract of hiring or an obligation to pay compensation will generally be presumed. Here, Davis and Mizell knew of the arrangement between Dempsey, Davis and Mizell regarding haulers and the fact that the haulers were paid by deducting from the loggers' earnings. A logger put the process into motion by requesting a hauler. By requesting a hauler Davis implicitly agreed to hire Mizell

---

[4] With regard to Davis's contention that Dempsey alone could fire Mizell, the evidence shows that Mizell could haul for any logger as long as he did not use Dempsey's trailer. We further note that the conditions under which Mizell used Dempsey's trailer is unclear. Davis testified he thought Mizell paid Dempsey a rental fee for use of the trailer. If so, the furnishing of equipment does not buttress Davis's contention that Mizell was Dempsey's subcontractor with respect to this job.

[5] Davis testified that in addition to deducting for hauler's costs, Dempsey also deducted from his proceeds worker's compensation payments and payments on equipment.

to haul on prearranged terms. The evidence fully supports the findings of the Commission and circuit court.

Affirmed.

SHAW and BELL, JJ., concur.