647 S.E.2d 691

**Rocque HERNANDEZ–ZUNIGA, Appellant,**

**v.**

**Andrew TICKLE and South Carolina Uninsured Employers Fund, Respondents.**

**No. 4253.**

Court of Appeals of South Carolina.

Submitted June 1, 2007.

Decided June 14, 2007.

236

238

Tiffany R. Spann–Wilder, of North Charleston, for Appellant.

Terri Morrill Lynch, of Charleston, for Respondents.

ANDERSON, J.:

The Appellate Panel of the South Carolina Workers' Compensation Commission ("SCWCC") found Andrew Tickle ("Tickle") did not regularly employ four or more employees. Accordingly, the Appellate Panel did not have jurisdiction to award benefits to Hernandez–Zuniga ("Claimant"). The circuit court affirmed the Decision and Order of the Appellate Panel. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

Claimant sustained his injury on May 10, 2003 when he fell from a ladder while painting for his employer, Tickle. He sought temporary disability benefits and medical treatment under the South Carolina Workers' Compensation Act (Act). Tickle claimed he was not subject to the Act because he regularly employed less than four workers.

At the time of his hearing, Claimant was a twenty-one year old Honduran with a sixth grade education who had been in the United States four years working as a painter. He began working for Tickle some time in the spring of 2003. Claimant worked eight hours a day and some weekends, earning ten dollars per hour. Tickle paid him directly, once a week, in cash. After commencing work for Tickle, Claimant worked regularly for approximately one month, until the day he fell. Claimant believed he would have continued employment with Tickle had he not been injured.

Claimant undertook three projects for Tickle—one project painting beach chairs and two house-painting projects. Two people, Claimant and Alle Hernandez (Alle),[2] worked on the

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. This witness is referred to in the Briefs on Appeal as Alle Hernandez. However, at the hearing the witness said his name was Alle Hernandez Alverez. For the sake of clarity we will refer to him as "Alle." Additionally, Appellant's Brief refers to Rene' Alverez, as the worker who finished up after Claimant was injured. However, Tickle declared the worker's name was Rene' Everest. Assuming this is the same individual, we will refer to him as "Rene."

beach chairs project. Claimant, Alle, and Victor Valdez (Victor) began painting the first house owned by the Garretts. Claimant and Alle subsequently went to the Hewitt [3] home while Victor purportedly continued work on the Garrett house. Franklin Hernandez–Zuniga (Franklin) allegedly joined Claimant and Alle at the Hewitt home, the site where Claimant fell. Claimant believed Franklin began work the day before the accident and quit shortly after Claimant was injured. Victor moved to the Hewitt project after Claimant's accident.

Tickle left his previous employer, the Finish Company, in 2003 and started his own business as a painting contractor. He claimed he initially arranged with Claimant and the other workers to supply all the paint for the Garrett house, get a draw each week, and divide the proceeds with them, in cash, without tax deductions. Ultimately he paid them weekly wages at an hourly rate. Tickle explained he hired the workers "project by project" because he had not yet established his company. Claimant and his co-workers provided their own brushes and caulk guns. Tickle acknowledged he agreed to pay them a flat fee of $1000 to paint the Hewitt house. Claimant did not complete the Hewitt project because of his injury, so Tickle paid him hourly for work completed.

Tickle asseverated there were never more than three people working for him in April or May 2003. He thought someone helped finish up after Claimant fell but denied knowing anyone named Franklin working on the projects. Beth Garrett, owner of the first house Tickle's crew painted, maintained she never observed more than three people working on her home.

Tickle obtained a business license on June 26, 2003 and established Tickle Tools in July 2003. He declared he conducted no official business as Tickle Tools before July 21, 2003.

The hearing commissioner found:

The evidence established that upon the jobs where the Claimant worked there were only two (2) individuals on the first and three (3) on the second. The only evidence of

---

**3.** The second painting job is confusingly referred to as the Hewitt house in some parts of the record and as the Pitts house in other parts. For clarity we refer to the second house as the Hewitt house.

employment of four (4) employees, which is conflicting, was for a day or two. Therefore, the Claimant did not meet his burden of proving the Employer "regularly" employed four or more employees.

Accordingly, the hearing commissioner ruled Claimant was not entitled to benefits under the Workers' Compensation Act because Tickle did not regularly employ four (4) or more employees as required by section 42–1–150 of the South Carolina Code of Laws (Supp. 2006). Consequently, the South Carolina Workers' Compensation Commission lacked jurisdiction to address the claim. The Appellate Panel affirmed the hearing commissioner's ruling and adopted his Decision and Order in its entirety. The circuit court affirmed.

## ISSUE

Did the Claimant demonstrate by a preponderance of the evidence that Tickle regularly employed four or more employees and was subject to the South Carolina Workers' Compensation Act?

## STANDARD OF REVIEW

 Judicial review of a Workers' Compensation decision is governed by the substantial evidence rule of the Administrative Procedures Act. *Baxter v. Martin Bros., Inc.,* 368 S.C. 510, 513, 630 S.E.2d 42, 43 (2006); *Shealy v. Aiken County,* 341 S.C. 448, 454, 535 S.E.2d 438, 442 (2000). However, if the factual issue before the Commission involves a jurisdictional question, this court's review is governed by the preponderance of evidence standard. *Nelson v. Yellow Cab Co.,* 343 S.C. 102, 108, 538 S.E.2d 276, 279 (Ct.App.2000) *aff'd* 349 S.C. 589, 564 S.E.2d 110 (2002); *Kirksey v. Assurance Tire Co.,* 314 S.C. 43, 45, 443 S.E.2d 803, 804 (1994); *Vines v. Champion Bldg. Prods.,* 315 S.C. 13, 16, 431 S.E.2d, 585, 586 (1993); *Porter v. Labor Depot,* 372 S.C. 560, 643 S.E.2d 96 (Ct.App.2007); *Cooke v. Palmetto Health Alliance,* 367 S.C. 167, 173, 624 S.E.2d 439, 441 (Ct.App.2005); *Edens v. Bellini,* 359 S.C. 433, 440, 597 S.E.2d 863, 867 (Ct.App.2004); *Simons v. Longbranch Farms, Inc.,* 345 S.C. 277, 280, 547 S.E.2d 500, 502 (Ct.App.2001); *Lake v. Reeder Constr. Co.,* 330 S.C. 242, 248, 498 S.E.2d 650, 654 (Ct.App.1998). Consequently, our review

is not bound by the Commission's findings of fact on which jurisdiction is based. *Canady v. Charleston County Sch. Dist.*, 265 S.C. 21, 25, 216 S.E.2d 755, 757 (1975). A reviewing court has both the power and duty to review the entire record, find jurisdictional facts without regard to conclusions of the Commission on the issue, and decide the jurisdictional question in accord with the preponderance of evidence. *Id.*; *see also Kirksey*, 314 S.C. at 45, 443 S.E.2d at 804 (holding this court can find facts in accordance with the preponderance of evidence when determining a jurisdictional question in a Workers' Compensation case); *Sanders v. Litchfield Country Club*, 297 S.C. 339, 342, 377 S.E.2d 111, 113 (Ct.App.1989) (deciding where a jurisdictional issue is raised, this court must review record and make its own determination whether the preponderance of evidence supports the Commission's factual findings bearing on that issue).

 Workers' compensation statutes are construed liberally in favor of coverage, and South Carolina's policy is to resolve jurisdictional doubts in favor of the inclusion of employees within workers' compensation coverage. *Nelson v. Yellow Cab Co.*, 343 S.C. 102, 109, 538 S.E.2d 276, 279 (Ct.App. 2000) *aff'd* 349 S.C. 589, 564 S.E.2d 110 (2002) (*citing Mauldin v. Dyna–Color/Jack Rabbit*, 308 S.C. 18, 416 S.E.2d 639 (1992); *O'Briant v. Daniel Constr. Co.*, 279 S.C. 254, 305 S.E.2d 241 (1983); *Horton v. Baruch*, 217 S.C. 48, 59 S.E.2d 545 (1950); *Spivey v. D.G. Constr. Co.*, 321 S.C. 19, 467 S.E.2d 117 (Ct.App.1996); *McLeod v. Piggly Wiggly Carolina Co.*, 280 S.C. 466, 313 S.E.2d 38 (Ct.App.1984)).

> In determining such jurisdictional questions, it must be kept in mind that the basic purpose of the Workmen's Compensation Act is the inclusion of employers and employees within its coverage and not their exclusion, and doubts of jurisdiction will be resolved in favor of inclusion rather than exclusion. However, a construction should not be adopted that does violence to the specific provisions of the Act.

*White v. J.T. Strahan Co.*, 244 S.C. 120, 135 S.E.2d 720, 723 (1964)

 While the appellate court may take its own view of the preponderance of evidence on the existence of an employer-employee relationship, the final determination of witness cred-

ibility is usually reserved to the Appellate Panel. *See Dawkins v. Jordan,* 341 S.C. 434, 441, 534 S.E.2d 700, 704 (2000) (*citing Ford v. Allied Chem. Corp.,* 252 S.C. 561, 167 S.E.2d 564 (1969)).

## *LAW/ANALYSIS*

Claimant contends the circuit court erred in finding Tickle was not an employer subject to the Workers' Compensation Act because he did not have four or more persons regularly employed. Specifically, Claimant maintains that four workers were Tickle's regular employees, and three individuals were his statutory employees. We disagree.

██ "The issue of whether an employer regularly employs the requisite number of employees to be subject to the Workers' Compensation Act is jurisdictional." *Harding v. Plumley,* 329 S.C. 580, 584, 496 S.E.2d 29, 31 (Ct.App.1998). The question of subject matter jurisdiction is a question of law. *Gray v. Club Group, Ltd.,* 339 S.C. 173, 183, 528 S.E.2d 435, 440 (Ct.App.2000); *Roper Hosp. v. Clemons,* 326 S.C. 534, 536, 484 S.E.2d 598, 599 (Ct.App.1997). On appeal from the Workers' Compensation Commission, this court may reverse where the decision is affected by an error of law. S.C.Code Ann. § 1–23–380(A)(5) (Act No. 387, 2006 S.C. Acts 387, eff. July 1, 2006); *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 337, 478 S.E.2d 74, 76 (Ct.App.1996).

██ Pellucidly, the appellate court's standard of review in cases involving jurisdictional questions is *not* a substantial evidence standard. Our precedent lucidly establishes that an appellate court reviews jurisdictional issues by making its own findings of fact without regard to the findings and conclusions of the Appellate Panel. *Harding,* 329 S.C. at 584, 496 S.E.2d at 31 (citing *Kirksey,* 314 S.C. at 45, 443 S.E.2d at 804). Furthermore, the appellate court evaluates the record and resolves the issue by determining whether the preponderance of evidence supports inclusion under the Act. *Id.* The appellant bears the burden of showing that the circuit court's decision is against the preponderance of evidence. *Gray,* 339 S.C. at 182, 528 S.E.2d at 440 (*citing Lake v. Reeder Constr. Co.,* 330 S.C. 242, 498 S.E.2d 650 (Ct.App.1998)); *Chavis v.*

*Watkins,* 256 S.C. 30, 180 S.E.2d 648 (1971); *Crim v. Decorator's Supply,* 291 S.C. 193, 352 S.E.2d 520 (Ct.App.1987).

## I. Four or More Persons Regularly Employed

Claimant urges that section 42–1–360(2) does not apply in the instant case, because the greater weight of the evidence indicates Tickle had four regularly employed workers during the relevant time period.

The South Carolina Workers' Compensation Act does not mandate coverage for all employees. Section 42–1–360 specifies that the Act excludes

(1) Casual employees, as defined in § 42–1–130, and Federal employees in this State;

(2) Any person who has regularly employed in service less than four employees in the same business within the State or who had a total annual payroll during the previous calendar year of less than three thousand dollars regardless of the number of persons employed during that period;

(3) Textile Hall Corporation, an eleemosynary corporation whose principal object is the organizing and production of the Southern Textile Exposition;

(4) State and county fair associations; unless any such employer voluntarily elects to be bound by this Title, as provided by § 42–1–380.

(5) Agricultural employees; unless the agricultural employer voluntarily elects to be bound by this Title, as provided by § 42–1–380.

S.C.Code Ann. § 42–1–360 (Supp.2006); *see also Nolan v. National Sales Co., Inc.,* 294 S.C. 371, 372, 364 S.E.2d 752, 753 (1988) (holding an employer must have at least four employees in the state to be subject to provisions of South Carolinas Workers' Compensation Act).

Addressing the minimum number requirement in exemption provisions like section 42–1–306(2), Professor Larson inculcates:

The controlling number of employees is determined in light of the employer's established mode or plan in the operation of its business. If it regularly employs the requisite number, the employer remains covered although the number

employed falls temporarily below the minimum. Ordinarily only such employees as would themselves be subject to the act are included in the count. Details of interpretation should be controlled by the underlying purpose of the exemption, which is to avoid administrative inconvenience to very small employers.

The most common problem under the usual wording of statutes conferring this type of exemption is the question of whether the employer "regularly" employs more than the minimum number. Since the practical effect of the numerical boundary is normally to determine whether compensation insurance is compulsory, an employer cannot be allowed to oscillate between coverage and exemption as its labor force exceeds or falls below the minimum from day to day. Therefore, if an employer has once regularly employed enough men to come under the act, it remains there even when the number employed temporarily falls below the minimum. The term "regularly employed" has been construed to embrace regularly-employed part-time as well as full-time workers. In all these cases, the fact that the number working at the exact time of injury was below the minimum is of course immaterial....

The question whether a particular employee should be disregarded for numerical-minimum purposes is very similar to the question whether he or she is a casual employee. It has been said that the two concepts are the same, and observation which, if true, would somewhat simplify the classification problem. As in the casual employment definition, both duration and regularity of recurrence are important factors. Thus, if the minimum number is exceeded on only eight of the one hundred and four days preceding the accident, the employer is not regularly employing the minimum. But if the number exceeds the minimum on seventeen out of twenty-seven days in the course of a construction job, the employer is covered.... It is the established mode or plan of operation of the business that is decisive.

4 Larson, *Workers' Compensation* §§ 74.01–02 (internal quotations and citations omitted).

## A. "Regularly Employed"

In *Harding v. Plumley,* we applied section 42–1–360(2) to a set of facts similar to those in the instant case. 329 S.C. at

584, 496 S.E.2d at 31. Plumley owned a construction company and hired Harding as a general laborer. *Id.* at 582, 496 S.E.2d at 30. Harding was injured on his first and only day on the job. *Id.* The hearing commissioner found the relevant time period for determining the number of regularly employed workers ran from two months before through two months after the accident, which corresponded to the period of construction. *Id.* at 584, 496 S.E.2d at 31. We concluded Plumley had "at the most, two regularly employed laborers" who worked during the relevant time period and were paid on an almost weekly basis. *Id.* at 586, 496 S.E.2d at 33. Two other laborers worked on occasion and received only one or two paychecks. *Id.* Assuming Harding's one day on the job amounted to regular employment, a fourth employee was still needed to meet jurisdictional requirements under section 42–1–360. *Id.* at 587, 496 S.E.2d at 33.

Turning to the case *sub judice,* we focus on the definition of "regularly employed." As noted in *Harding,* section 42–1–360 does not define the term "regularly employed." 329 S.C. at 584, 496 S.E.2d at 31. When faced with an undefined statutory term, the court must interpret the term in accord with its usual and customary meaning. *Branch v. City of Myrtle Beach,* 340 S.C. 405, 409–10, 532 S.E.2d 289, 292 (2000); *Liberty Mut. Ins. Co. v. South Carolina Second Injury Fund,* 363 S.C. 612, 622, 611 S.E.2d 297, 302 (Ct.App. 2005); *University of Southern California v. Moran,* 365 S.C. 270, 276, 617 S.E.2d 135, 138 (Ct.App.2005); *see also Santee Cooper Resort v. South Carolina Pub. Serv. Comm'n,* 298 S.C. 179, 184, 379 S.E.2d 119, 122 (1989) ("Words used in a statute should be taken in their ordinary and popular significance unless there is something in the statute requiring a different interpretation."). "The terms must be construed in context and their meaning determined by looking at the other terms used in the statute." *Hinton v. S.C. Dep't of Prob., Parole and Pardon Servs.,* 357 S.C. 327, 332–33, 592 S.E.2d 335, 338 (Ct.App.2004).

Courts should consider not merely the language of the particular clause being construed, but the word and its meaning in conjunction with the purpose of the whole statute and the policy of the law. *Whitner v. State,* 328 S.C. 1, 16, 492

S.E.2d 777, 779 (1997); *see also State v. Gordon,* 356 S.C. 143, 152, 588 S.E.2d 105, 110 (2003) ("[T]he court should not consider the particular clause being construed in isolation, but should read it in conjunction with the purpose of the whole statute and the policy of the law."); *Stephen v. Avins Const. Co.,* 324 S.C. 334, 340, 478 S.E.2d 74, 77 (Ct.App.1996) (finding statutory provisions should be given reasonable and practical construction consistent with purpose and policy of entire act).

 Dictionaries can be helpful tools during the initial stages of legal research for the purpose of defining statutory terms. *Heilker v. Zoning Bd. of Appeals for City of Beaufort,* 346 S.C. 401, 409, 552 S.E.2d 42, 46 (Ct.App.2001). The term "regularly" means "[a]t fixed and certain intervals, regular in point of time. In accordance with some consistent or periodical rule or practice." *Black's Law Dictionary,* 1286 (6th ed. 1990). "Regular" is defined as "usual, customary, normal or general." *Id.* at 1285.

 In the context of construing the statute, the term "regular" is often juxtaposed with the term "casual." 4 Larson, *Workers' Compensation* §§ 74.01–02 ("It has been said that the two concepts are the same ... in the casual employment definition, both duration and regularity of recurrence are important factors."). Where employment cannot be characterized as permanent or periodically regular, but occurs by chance, or with the intention and understanding on the part of both employer and employee that it shall not be continuous, it is casual. *Smith v. Coastal Tire and Auto Service* 263 S.C. 77, 81, 207 S.E.2d 810, 812 (1974). "Employment is casual when not permanent or periodically regular but occasional or by chance and not in the usual course of the employers trade or business." *Singleton v. J.P. Stevens & Co., Inc.,* 533 F.Supp. 887, 892 (D.C.S.C.1982) *aff'd Singleton v. J.P. Stevens & Co., Inc.,* 726 F.2d 1011 (4th Cir.1984); *see also* S.C.Code Ann. § 42–1–130 (Supp.2006) (excluding "a person whose employment is both casual and not in the course of the trade, business, profession, or occupation of his employer" from the definition of employee under the Act).

 Because South Carolina workers' compensation law is fashioned after North Carolina's statute, our courts often rely on North Carolina precedent for guidance in interpreting the

South Carolina Workers' Compensation Act. *Nelson v. Yellow Cab Co.*, 343 S.C. 102, 117–118, 538 S.E.2d 276, 284 (Ct.App. 2000) *aff'd* 349 S.C. 589, 564 S.E.2d 110 (2002) (citing *Spoone v. Newsome Chevrolet–Buick*, 309 S.C. 432, 424 S.E.2d 489 (1992)); *Stephen v. Avins Constr. Co.*, 324 S.C. 334, 340, 478 S.E.2d 74, 77 (Ct.App.1996) (decisions of North Carolina courts interpreting that state's Workers' Compensation statute are entitled to weight when South Carolina courts interpret South Carolina Workers' Compensation law).

North Carolina courts have interpreted "regularly employed" as "employment of the same number of persons throughout the period with some constancy." *Grouse v. DRB Baseball Management, Inc.*, 121 N.C.App. 376, 465 S.E.2d 568, 570 (1996) (citing *Patterson v. L.M. Parker Co.*, 2 N.C.App. 43, 162 S.E.2d 571, 575 (1968)). The court explained the purpose of the Act would not be accomplished "by making it applicable to an employer who may have had, in the total number of persons entering and leaving his service during the period, more than the minimum number required by the Act." *Patterson*, 162 S.E.2d at 575.

## B. Relevant Time Period

A priori, we must identify the relevant time period for determining whether a minimum number of persons were employed throughout the period with some constancy. This task is particularly difficult for employment in which workers come and go due to the nature and type of work they perform.

As Professor Larson edifies, the employer's established mode or plan of operation dictates, to a large extent, the relevant time period, and both duration and regularity of occurrence are important factors. In *Harding*, the time roughly corresponding to the duration of the construction project constituted the relevant period. *Harding v. Plumley*, 329 S.C. 580, 584, 496 S.E.2d 29, 31 (Ct.App.1998). Because only two employees worked with any constancy for the duration of that period, the employer was not required to provide Workers' Compensation coverage. *Id.* at 587, 496 S.E.2d at 31.

In *Patterson*, the North Carolina Supreme Court looked at the number employed six weeks prior to the claimant's injury

and determined it was less than the jurisdictional minimum. *Patterson v. L.M. Parker Co.,* 2 N.C.App. 43, 162 S.E.2d 571, 574 (1968). The court concluded the minimum number was not employed with sufficient constancy or regularity during that time to bring the employer under the provisions of the Act. *Id.*

In *Durham v. McLamb,* an employer hired four carpenters to work on a construction project in December, 1979. 59 N.C.App. 165, 296 S.E.2d 3, 5 (1982). The claimant was injured on December 20, 1979. *Id.* at 4. All the workers were discharged in January 1980 because the employer could no longer pay them. *Id.* at 5. The employer argued he was exempt from the Act because during the week claimant was injured, only three workers were on the job. *Id.* at 7. The court reasoned "the number of workers on the job site on the date of the injury, standing alone, is not determinative of the issue. If the defendant had four or more "regularly employed" employees, the fact that he fell below the minimum requirement on the actual date of injury would not preclude coverage." *Id.* The four employees were deemed full-time and "regularly employed" until their discharge in early January, 1980. *Id.* "[A]lthough they worked irregular days and hours, their employment extended over a period of some four weeks, during which they worked, not by chance or for a particular occasion, but according to a definite employment at hourly wages which were paid at the end of each week worked." *Id.*

The North Carolina Court of Appeals revisited this issue in *Grouse v. DRB Baseball Management, Inc.,* 121 N.C.App. 376, 465 S.E.2d 568, 570 (1996). The court found evidence DRB employed "with some constancy" at least four people during the year the claimant was injured, even though only three regularly employed workers were present on the day of the injury. *Id.* at 571.

In the case at bar, Tickle left the Finish Company and engaged in itinerant projects to earn income while he was developing his business plan. His mode of operation was "project to project." He claimed he initially attempted to form a partnership with the workers. Nevertheless, he paid the workers hourly wages, and that arrangement persisted throughout the period.

Once Claimant commenced work in the spring of 2003, he worked continuously until the day of his accident, a period of approximately four to six weeks. Work on Tickle's projects subsided after Claimant was injured and resumed after Tickle obtained a business license and workers' compensation insurance.

■■■ We determine the relevant time period for ascertaining whether Tickle regularly employed four or more employees with some constancy began when Claimant started working for Tickle on the beach chairs project. The period terminated shortly after Claimant's injury, when Tickle ceased operating until he officially opened his business.

During the relevant period, the workers undertook three projects. Two people worked on the first project painting beach chairs. Three people worked on each of the two houses. Allegedly, a fourth employee continued to finish up work on the Garrett house while the others moved on to the next project. Claimant and Alle worked every weekday and some weekends after Tickle hired them; they expected their employment to continue.

Tickle disavowed any employment relationship with the workers, professing instead to have formed a business partnership with them. The record provides little to substantiate Tickle's assertion. Alternatively, Tickle admitted he hired the workers on a project-by-project basis, because he was just starting up his painting business.

■■■ We conclude Claimant and Alle were Tickle's employees and not business partners. In addition, they were "regularly employed" workers during the relevant period. On the other hand, the greater weight of evidence indicates Franklin was not regularly employed by Tickle. Testimony about the duration of his employment was conflicting and inconclusive. Tickle disclaimed any knowledge that Franklin worked on any of the projects, though he was aware another individual might have worked on the Hewitt project. Moreover, Beth Garrett never observed more than three workers painting her house. Even if Victor worked for Tickle at the same time, but in another location, Claimant still fails to demonstrate Tickle regularly employed at least four workers with some constancy during the relevant period.

## II. Statutory Employees

Claimant argues that three individuals were Tickle's statutory employees under section 42–1–400 and should be counted to meet the jurisdictional requirement of four or more regular employees. We disagree.

 The question of whether a worker is a statutory employee is jurisdictional and is therefore a question of law for the court. *Riden v. Kemet Electronics Corp.*, 313 S.C. 261, 263, 437 S.E.2d 156, 157 (Ct.App.1993) (citing *Bigham v. Nassau Recycle Corp.*, 285 S.C. 200, 328 S.E.2d 663 (Ct.App. 1985)).

Section 42–1–400 defines an owner's obligation to provide workers' compensation coverage for the workmen of his subcontractor:

When any person, in this section and §§ 42–1–420 and 42–1–430 referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 42–1–420 to 42–1–450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

S.C.Code Ann. § 42–1–400 (Supp.2006).

In *Ost v. Integrated Prod., Inc.*[4], the supreme court first addressed whether statutory employees of a subcontractor may be counted toward the number of employees required to bring the general contractor within the Act. 296 S.C. 241, 371 S.E.2d 796 (1988). Integrated was a Georgia corporation

---

4. The court distinguished *Nolan v. National Sales*, 294 S.C. 371, 364 S.E.2d 752 (1988) in its analysis in *Ost*. In *Nolan*, the claimant, a National Sales employee, attempted to amalgamate Integrated's pilots as National's statutory employees in order to meet the South Carolina Workers' Compensation Act's jurisdictional requirement. The Court of Appeals held Nolan's assertion was not preserved and without merit. The supreme court affirmed and suggested its agreement with the Court of Appeals that National Sales, as the subcontractor of Integrated, could not count Integrated's employees to meet the jurisdictional requirement.

employing three pilots who regularly flew into South Carolina in the course and scope of their employment. *Id.* at 243, 371 S.E.2d at 797. Integrated contracted with National Sales Company, a Georgia corporation, to provide personnel to sell Integrated's yarn products in South Carolina. *Id.* Neither the pilots nor the sales personnel were residents of South Carolina, but *all traveled into South Carolina regularly in the course of their employment. Id.* (emphasis added).

Ost, a pilot for Integrated, was killed in an airplane crash near Greenville, South Carolina. *Id.* at 242–43, 371 S.E.2d at 797. The circuit court upheld a Workers' Compensation award of death benefits and Integrated appealed, arguing it had less than four employees working in South Carolina and was exempt from the Act under S.C.Code section 42–1–360(2). *Id.* at 242, 371 S.E.2d at 797. Ost asserted the employees of National Sales, Integrated's subcontractor, were statutory employees and should be counted for purposes of meeting the jurisdictional requirement. *Id.*

The court analyzed three South Carolina cases interpreting section 42–1–400 "to determine whether employees of a secondary employer constitute statutory employees of the principal employer." *Ost,* 296 S.C. at 244, 371 S.E.2d at 798.

In the leading case, *Marchbanks v. Duke Power Company,* 190 S.C. 336, 2 S.E.2d 825 (1939), this Court held that when a person performs work which is part of the trade or business of the principal, the employees of the person will be considered statutory employees of the principal. We concluded that a person who was injured while painting the power company's pole was engaged in the 'trade, business or occupation' of the power company because the activity was an important part of the power company's trade or business.

Likewise, in *Boseman v. Pacific Mills,* 193 S.C. 479, 8 S.E.2d 878 (1940), we held that when an activity performed by the employees of a subcontractor is necessary, or essential to, or an integral part of, the operation of the principal employer's business, the employees of the subcontractor constitute the statutory employees of the principal employer. There, an employee of the subcontractor, who was painting a water tank at a mill, was killed when the tank

caught fire and exploded. Our court reasoned that the water tank, which provided essential protection to the mill against fires, was an integral part of the trade or business of the mill as to subject it to liability for the death of Boseman. This court espoused another test to determine whether an employee of a subcontractor was a statutory employee in *Bridges v. Wyandotte Worsted Company*, 243 S.C. 1, 132 S.E.2d 18 (1963). In *Bridges*, the defendant contracted with an electric company, plaintiff's employer, to repair or replace the transmission line owned by the defendant and located on his property. The lines had been replaced on a previous occasion, and customarily maintained by a qualified crew regularly employed by the defendant. We concluded that the repair or replacement of the transmission lines was a part of the work ordinarily and customarily performed by the employees of the defendant in the prosecution of the defendant's business. Finding the repair of the transmission lines was a part of the defendant's trade or business, we held that the defendant was liable for the subcontractor's employees' injuries.

*Id.* at 245, 371 S.E.2d at 798–99.

Thus, a three-part test emerged to ascertain whether employees of a subcontractor are statutory employees of the general contractor. *Id.* at 246–47, 371 S.E.2d at 799. "This statutory requirement has been construed to include activities that: (1) are an important part of the trade or business of the employer, (2) are a necessary, essential, and integral part of the business of the employer, or (3) have been previously performed by employees of the employer." *Glass v. Dow Chemical Co.*, 325 S.C. 198, 201, 482 S.E.2d 49, 50–51 (1997) (citing S.C.Code Ann. § 42–1–400 (1976)); *Woodard v. Westvaco Corp.*, 315 S.C. 329, 337, 433 S.E.2d 890, 894 (Ct.App. 1993), *vacated on other grounds*, 319 S.C. 240, 460 S.E.2d 392 (1995). "Only one of these tests must be met in order for a subcontractor's employees to be considered the statutory employees of the owner." *Glass*, 325 S.C. at 201, 482 S.E.2d at 51 (citing *Woodard*, 315 S.C. at 337, 433 S.E.2d at 894). "Since no easily applied formula can be laid down for determining whether work in a particular case meets these tests, each case must be decided on its own facts." *Id.* (citing *Ost*, 296 S.C. at 244, 371 S.E.2d at 798); *see also Olmstead v.*

*Shakespeare,* 354 S.C. 421, 581 S.E.2d 483 (2003); *Meyer v. Piggly Wiggly No. 24, Inc.,* 331 S.C. 261, 500 S.E.2d 190 (Ct.App.1998).

The *Ost* court concluded National Sales' employees were statutory employees of Integrated and held those employees may be included to satisfy the four person jurisdictional requirement of Section 42–1–360(2). *Ost,* 296 S.C. at 247, 371 S.E.2d at 799. In reaching this conclusion the court considered the underlying purpose of the Act:

> It was evidently realized by the General Assembly that it would not be fair to relieve the owner of compensation to employees doing work which was part of his trade or business by permitting such owner to sublet or subcontract some part of said work. Doubtless in many instances such contractor would be financially irresponsible, or the number of employees under him would be so small, as in this case, that such contractor would not be required under the Act to carry compensation insurance. It was therefore, provided under the first paragraph that where such work in which the employee was engaged was a part of the owner's trade or business, the owner would be responsible in compensation to all employees doing such work, whether employees of an independent contractor or not.

*Id.* at 247, 371 S.E.2d at 800.

In *Harding,* Plumley engaged two subcontractors during the relevant time period to perform certain parts of the construction. 329 S.C. at 585, 496 S.E.2d at 32. Harding argued the subcontractors' two workers were statutory employees according to section 42–1–400 of the South Carolina Code of Laws and should be counted in determining whether Plumley was exempt under provision 42–1–360(2). *Id.* The court considered *Ost* in addressing the claimant's argument. We noted one of Plumley's subcontractors was paid only once and the other, twice, during the relevant time period. In contrast, the statutory employees in *Ost* "regularly" traveled into South Carolina as part of their employment. Even assuming Plumley's subcontractors' workers were statutory employees, we held the record did not support a conclusion that Plumley employed the "same number of persons through the period with some constancy." *Id.* at 587, 496 S.E.2d at 33

(citing *Patterson v. L.M. Parker Co.*, 2 N.C.App. 43, 162 S.E.2d 571, 575 (1968)).

Here, Claimant asserted that three individuals— Rene, Fernando Lucas, and Claudio Gomez—were statutory employees of Tickle and should be counted toward the jurisdictional minimum. Tickle disclosed that he hired Rene to finish up work after Claimant's accident. He then explained Fernando Lucas was a finisher with whom he subcontracted to "do a couple of patches." Tickle paid Lucas $120.00 on April 10, 2003, $40.00 on May 2, 2003, and $970.00 on July 31, 2003. Tickle issued a $750.00 check to Claudio Gomez on July 25, 2003.[5] The record substantiates that Fernando Lucas performed work that was an important part of Tickle's painting business and a necessary and integral part of Tickle's trade. *See Ost*, 296 S.C. at 244, 371 S.E.2d at 798. However, without evidence describing the work Rene and Gomez performed, we cannot determine whether they were Tickle's statutory employees under section 42–1–400 and the test in *Ost*. Even assuming the three were all statutory employees, our reasoning in *Harding* is equally applicable in addressing whether they should be counted toward the jurisdictional minimum. Like the subcontractors' workers in *Harding*, the statutory employees here did not work for Tickle in a regular, recurring capacity. Although Tickle may have employed some additional workers or statutory employees, the record fails to support the conclusion that Tickle employed "the same number of persons throughout the period with some constancy." *Harding v. Plumley*, 329 S.C. at 587, 496 S.E.2d at 33.

## CONCLUSION

To promote the purpose of the Workers' Compensation Act, the statute is to be construed liberally for the protection of the injured worker, with jurisdictional doubts generally resolved in favor of inclusion. We are, nevertheless, constrained to interpret the Act as it is written and do not have the power to expand its scope.

---

5. We are unable to identify from the handwriting on this check the purpose of its issue.

The statutory language unequivocally exempts employers who do not regularly employ four or more employees. We adopt the definition of "regularly employed" as employment of the same number of persons with some constancy throughout a relevant time period. We rule the relevant time period should be identified by considering (1) the employer's established mode of operation; (2) whether the employer generally employs the jurisdictional number at any time during his operation, and (3) the period during which employment is definite and recurrent rather than occasional, sporadic, or indefinite.

Taking our own view of the preponderance of the evidence, we conclude Tickle regularly employed less than four workers during the identified relevant time period. Tickle was exempt from the South Carolina Workers' Compensation Act when Claimant sustained his injury. The Appellate Panel of the Workers' Compensation Commission did not have jurisdiction to consider his claim.

Accordingly, the decision of the circuit court is

**AFFIRMED.**

HUFF and BEATTY, JJ., concur.