771 S.E.2d 851

George **FERGUSON**, Claimant, Appellant,

v.

**NEW HAMPSHIRE INSURANCE COMPANY**, Carrier for Amerco/U–Haul International, and Sean P. Unterkoefler d/b/a United Stand Moving, Employer, and S.C. Workers' Compensation Uninsured Employers Fund, Respondents.

Appellate Case No. 2013–001896.

Opinion No. 5307.

Court of Appeals of South Carolina.

Heard Jan. 13, 2015.

Decided April 1, 2015.

Rehearing Denied May 21, 2015.

204

206

---

Stephen Benjamin Samuels, of Samuels Law Firm, LLC, of Columbia, and Natasha M. Hanna, of Myrtle Beach, for Appellant.

Stanford Ernest Lacy, Peter H. Dworjanyn, and Christian Stegmaier, all of Collins & Lacy, PC, of Columbia, and Ashley Ryon Kirkham, of Turner Padget Graham & Laney, PA, of Columbia, for Respondents Amerco/U–Haul International and New Hampshire Insurance Company; Lisa C. Glover, of the Uninsured Employers' Fund Division of the State Accident Fund, of Columbia, for Respondent SC Workers' Compensation Uninsured Employers Fund; and Sean P. Unterkoefler, pro se.

SHORT, J.

In this appeal from the Workers' Compensation Commission, George Ferguson argues the Appellate Panel of the Workers' Compensation Commission (Appellate Panel) erred in finding he failed to carry his burden of proving (1) eMove, Inc. was his statutory employer; (2) he was an employee of Sean Unterkoefler d/b/a United Stand Moving (Unterkoefler); and (3) Unterkoefler employed four or more employees during the relevant period, making Unterkoefler an uninsured employer subject to the South Carolina Workers' Compensation Act (the Act). We affirm.

## FACTS

eMove operates an internet marketplace where individuals or businesses renting moving trucks can search for and hire local moving companies to assist with loading and/or unloading rental trucks. eMove contracts with local moving companies to provide the loading and unloading services.[1] eMove customers sign up for the moving service on its website and select the moving company of their choice. eMove then sends a text message to the moving company informing them of the customer's booking information. After the job is completed, eMove releases the customer's payment for the services to the moving company, keeping fifteen percent of the total amount paid by the customer for its services.

Unterkoefler[2] executed a contract with eMove in March 2009 to provide moving help to eMove's customers.[3] Unterkoefler testified he took part in a telephone training session with eMove and eMove gave him advice on how to keep its customers happy. eMove also explained what the moving companies could and could not do, including making clear to

---

**1.** On its website, U–Haul calls the subcontractor a "Moving Helper" and defines a "Moving Helper" as "an independent individual or company who participates in the Moving Help marketplace."

**2.** Unterkoefler did not register his business with the South Carolina Secretary of State or file taxes for his business. eMove did not provide him with any tax forms, such as a W–2 or a 1099. Unterkoefler started the business by visiting eMove's website and signing up for an account.

**3.** Unterkoefler testified in his deposition he was not a subcontractor of eMove.

Unterkoefler he could not have any side agreements or direct contact with a customer except through eMove.

Unterkoefler provided a labor service to his customers and did not have a moving truck or equipment. He used rental moving trucks, blankets, dollies, and other items supplied by his customers. He also set the days and times he would perform moving services and set his own rates, times, and coverage areas. Unterkoefler operated the moving business himself, and when he could not complete the job on his own due to the size or having multiple jobs at the same time, he asked for help or gave the job to someone else. He paid whomever he worked with per job in cash and did not take any money for himself unless he participated in the job. Ferguson testified he performed approximately ten to fifteen moving jobs between April/May 2010 and August 2010 and he worked with three other movers at various times.

Ferguson was working part time for Unterkoefler on August 21, 2010, when he injured his right hand while moving a washer/dryer unit. On August 27, 2010, Ferguson had surgery on his small right finger. He did not allege an injury to his right shoulder until after his deposition in March 2012.

Ferguson filed a Form 50, seeking workers' compensation benefits from the August 21 accident. He claimed injuries to his right hand and right arm. He served the form on United Stand Moving, eMove, New Hampshire Insurance Company, and the South Carolina Uninsured Employers Fund (the Fund).[4] eMove and New Hampshire Insurance Company filed a Form 51, denying all allegations made by Ferguson. Ferguson filed an amended Form 50, claiming injuries to his right shoulder, right hand, right arm, and right knee. eMove and the Fund each filed a Form 51 in response. Unterkoefler did not make a formal appearance in the case and did not file any pleadings; however, his deposition was taken.

After a hearing, the single commissioner denied benefits and dismissed the case. The commissioner found Ferguson

---

4. Amerco/U–Haul, which owns eMove, is insured through the New Hampshire Insurance Company. Unterkoefler is uninsured; thus, the South Carolina Uninsured Employers Fund was added as a party. Unterkoefler did not purchase workers' compensation insurance, believing it was not required because he had less than three employees.

failed to prove he was an employee of Unterkoefler and failed to prove eMove was his statutory employer. Ferguson filed a Form 30 Notice of Appeal, and the Appellate Panel affirmed the single commissioner. This appeal followed.

## STANDARD OF REVIEW

"The determination of whether a worker is a statutory employee is jurisdictional and therefore the question on appeal is one of law." *Harrell v. Pineland Plantation, Ltd.*, 337 S.C. 313, 320, 523 S.E.2d 766, 769 (1999). Thus, this court reviews the entire record and decides the jurisdictional facts in accord with the preponderance of the evidence. *Id.*

## LAW/ANALYSIS

### I. eMove

Ferguson argues the Appellate Panel erred in finding he failed to carry his burden of proving eMove was his statutory employer. We disagree.

The initial question is whether eMove has "owner" liability under section 42–1–400 of the South Carolina Code (2015). If so, eMove would be deemed Ferguson's "statutory employer" and liable for workers' compensation. *See Parker v. Williams & Madjanik, Inc.*, 275 S.C. 65, 72, 267 S.E.2d 524, 528 (1980) (holding an owner, in effect, becomes the employee's statutory employer, even though in law the owner is not the immediate employer of the injured worker).

Section 42–1–400 provides:

When any person, in this section and Sections 42–1–420 and 42–1–430 referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and Sections 42–1–420 to 42–1–450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this title which he would have been liable to pay if the workman had been immediately employed by him.

This court must make two determinations in assessing whether owner workers' compensation liability will attach to

eMove. First, eMove must qualify as a business under the Act. "For the purposes of workers' compensation, '[t]he test is not whether the employer is in business for profit, but whether the employer is in business at all. If he supplies a product or service, it is immaterial what he does with his profits, or whether he expects or gets any profits at all.'" *Harrell*, 337 S.C. at 321, 523 S.E.2d at 770 (quoting 4 Arthur Larson, Workers' Compensation Law § 50.44(a) (1998)).

██ Second, Ferguson's work must have constituted part of eMove's trade, business, or occupation. "The activity is considered 'part of [the owner's] trade, business, or occupation' for purposes of the statute if it (1) is an important part of the owner's business or trade; (2) is a necessary, essential, and integral part of the owner's business; or (3) has previously been performed by the owner's employees." *Olmstead v. Shakespeare*, 354 S.C. 421, 424, 581 S.E.2d 483, 485 (2003). "If the activity at issue meets even one of these three criteria, the injured employee qualifies as the statutory employee of 'the owner.'" *Id.* "Owners are treated as statutory employers in these situations because an owner should not be able to avoid workers' compensation liability by subcontracting out the work of their business." *Harrell*, 337 S.C. at 322, 523 S.E.2d at 771. "[A] subcontractor is an independent contractor contracting with the contractor to do part of the work which the contractor has previously agreed to perform." *Murray v. Aaron Mizell Trucking Co.*, 286 S.C. 351, 355, 334 S.E.2d 128, 130 (Ct.App.1985).

Ferguson argues eMove's sole source of revenue is the fifteen percent it collects from the total amount paid by the customer for a moving job completed by the local moving company and "[i]f people like Unterkoefler and Ferguson did not do the moving jobs, eMove would have no revenue at all." Ferguson asserts:

eMove knew moving jobs require at least a two-person crew. Even if one member of the crew was an independent contractor, eMove knew the other was certainly an employee. eMove also knew that many, if not most, of its subcontractors were too small to require workers' compensation insurance. eMove cannot claim ignorance of the risks faced by the downstream employees engaged in a very physical,

dangerous job. Indeed, its contract seems knowingly designed to circumvent statutory employer liability.

eMove asserts the Appellate Panel properly relied on *Murray*. In *Murray*, this court held a trucker, who was injured while hauling lumber from a work site of a contract logger to a lumber manufacturer's plant, was the statutory employee of the contract logger rather than the lumber manufacturer because of the implied contract between the contract hauler and the contract logger whereby the contract hauler would transport lumber for the contract logger when needed. *Id.* at 356–57, 334 S.E.2d at 131. Further, eMove maintains unlike in *Murray*, Unterkoefler was not obligated to perform any work for eMove and was only obligated to perform jobs for customers that selected his company and scheduled an appointment for his services. Additionally, it argues the record contains no evidence to support Ferguson's assertion that eMove's marketplace fee is its sole source of revenue.

eMove contends it is not in the business of moving and eMove merely provides a service or marketplace in which U–Haul truck renters and movers can meet to assist with moving help. The Appellate Panel found the actual moving was not a part of eMove's trade, business, or occupation and eMove's business was to match U–Haul renters with moving help. The Appellate Panel further found Ferguson presented no evidence eMove contracted with anyone to move or engaged in any moving itself. Therefore, the Appellate Panel found Ferguson failed to prove eMove was his statutory employer.

Based on our review of the record, we find the Appellate Panel correctly found eMove was not Ferguson's statutory employer. While eMove does rely on the movers to receive fifteen percent of the total amount paid by the customer for the local mover's services, eMove is not a moving company. eMove's business or trade is to create a marketplace where U–Haul renters can meet movers.

## II.   Unterkoefler

Ferguson argues the Appellate Panel erred in finding he failed to carry his burden of proving he was an employee of Unterkoefler. We disagree.

Section 42–1–130 of the South Carolina Code (2015) defines an "employee" as:

[E]very person engaged in an employment under any appointment, contract of hire, or apprenticeship, expressed or implied, oral or written, including aliens and also including minors, whether lawfully or unlawfully employed, but excludes a person whose employment is both casual and not in the course of the trade, business, profession, or occupation of his employer....

Section 42–1–360 of the South Carolina Code (2015) provides the Workers' Compensation Law does not apply to: (1) a casual employee, as defined in Section 42–1–130; or (2) any person who has regularly employed in service less than four employees in the same business within the State or who had a total annual payroll during the previous calendar year of less than three thousand dollars regardless of the number of persons employed during that period.

■ Thus, Ferguson must prove he was an employee of Unterkoefler and Unterkoefler regularly employed four or more employees. "Under settled law, the determination of whether a claimant is an employee or independent contractor focuses on the issue of control, specifically whether the purported employer had the right to control the claimant in the performance of his work." *Wilkinson ex rel. Wilkinson v. Palmetto State Transp. Co.*, 382 S.C. 295, 299, 676 S.E.2d 700, 702 (2009). "In evaluating the right of control, the Court examines four factors which serve as a means of analyzing the work relationship as a whole: (1) direct evidence of the right or exercise of control; (2) furnishing of equipment; (3) method of payment; (4) right to fire." *Id.*

At the hearing before the Commissioner, the Fund contended Ferguson was not an employee of Unterkoefler and, in the alternative, Unterkoefler subcontracted the jobs from eMove to Ferguson. The Commissioner found Ferguson failed to prove he was an employee of Unterkoefler.

Considering the first of the four factors of control, the right to control, Ferguson worked for Unterkoefler part time and helped him load and unload trucks rented by customers of Unterkoefler. In the few jobs Ferguson completed for Unterkoefler on his own, like the one when he was injured, Unter-

koefler did not exercise control over the work he performed. Unterkoefler merely gave Ferguson the customer's information. The customer dictated the date, time, and location of the job. When the job was completed, Unterkoefler gave Ferguson cash for the entire cost of the job. Unterkoefler testified he did not financially benefit from a job completed by Ferguson unless he performed the job with Ferguson.

Regarding the furnishing of equipment, Unterkoefler provided a labor service to his customers. He did not have his own moving truck or equipment, and he used the truck his customers rented and any equipment that came with their rental truck. He did not have a uniform for himself or anyone who helped him. He and his helpers also used their own transportation to travel to and from the customer's residence.

Concerning the method of payment, Unterkoefler was paid by the job and split his earnings with the number of helpers he had during the job, paying them in cash. Finally, as to the right to fire, Unterkoefler could choose to use someone other than Ferguson for a job. Ferguson could also decline or refuse to perform a job. There was no set schedule, and Ferguson did not work on a consistent basis.

Therefore, after reviewing the evidence, we find the Appellate Panel correctly found Unterkoelfer was not Ferguson's employer.

### III. Uninsured Employer

██ Ferguson argues the Appellate Panel erred in finding he failed to carry his burden of proving Unterkoefler employed four or more employees during the relevant period, making Unterkoefler an uninsured employer subject to the Act. We disagree.

Section 42–1–360(2) provides the Workers' Compensation Law does not apply to

any person who has regularly employed in service less than four employees in the same business within the State or who had a total annual payroll during the previous calendar year of less than three thousand dollars regardless of the number of persons employed during that period.

██ "Regularly employed" has been defined by this court as "employment of the same number of persons through-

out the period with some constancy." *Hernandez–Zuniga v. Tickle,* 374 S.C. 235, 257, 647 S.E.2d 691, 702 (Ct.App.2007). "Where employment cannot be characterized as permanent or periodically regular, but occurs by chance, or with the intention and understanding on the part of both employer and employee that it shall not be continuous, it is casual." *Hernandez–Zuniga,* 374 S.C. at 248, 647 S.E.2d at 697–98. In determining the relevant time period, the Commission should consider "(1) the employer's established mode of operation; (2) whether the employer generally employs the jurisdictional number at any time during his operation, and (3) the period during which employment is definite and recurrent rather than occasional, sporadic, or indefinite." *Id.* at 257, 647 S.E.2d at 702.

Ferguson asserts the relevant time period in this case was the period during July and August 2010 when he was working with Unterkoefler with regularity. During July and August, Ferguson testified he worked as many as five jobs a week. He also testified he worked with three other movers at various times. Ferguson agreed he would defer to Unterkoefler's testimony on whether Unterkoefler had any employees. Unterkoefler testified he did not have any employees. He stated, "I pretty much operated myself ... I had some friends here and there, but no one in particular person for a certain—for a long, lengthy time. It was kind of just based on when I got the work I found someone to help me." He further testified that at any given time, the most people doing a job were himself and three helpers.

The Appellate Panel found Ferguson failed to prove Unterkoefler regularly employed four or more employees, and therefore, he was not subject to the Act. After reviewing the evidence, we conclude Unterkoefler regularly employed less than four workers during the identified relevant time period. Thus, Unterkoefler was exempt from the Act when Ferguson sustained his injury, and the Appellate Panel did not have jurisdiction to consider his claim.

**CONCLUSION**

Accordingly, the decision of the Appellate Panel is **AFFIRMED.**

HUFF and KONDUROS, JJ., concur.