547 S.E.2d 500

Wynonie SIMONS, as Personal Representative of the Estate of Wynonie Q. Simons, Deceased, Appellant,

v.

LONGBRANCH FARMS, INC. a/k/a Long Branch Farms, Respondent.

No. 3338.

Court of Appeals of South Carolina.

Heard April 4, 2001.
Decided April 30, 2001.
Rehearing Denied July 2, 2001.

278

Hammond A. Beale, of Palmetto Law Center; and John F. Koon, of Koon & Cook, both of Columbia, for appellant.

F. Barron Grier, III, of the Grier Law Firm; and Deborah Harrison Sheffield, both of Columbia, for respondent.

HUFF, Judge:

In this wrongful death and survival action, Wynonie Simons (Simons), Personal Representative of the Estate of Wynonie Q. Simons, appeals the trial court's ruling it lacked subject matter jurisdiction to hear the action due to the exclusivity provision of the Workers' Compensation Act. We reverse and remand.

## FACTUAL/PROCEDURAL BACKGROUND

R.C. McEntire, Inc. is a wholesale produce company. As part of its business, R.C. McEntire buys produce such as lettuce and tomatoes from around the country and then trims, cores, cuts, washes, dries, and packages the produce for distribution to fast food restaurants. This process generates a large amount of waste product, which proved to be problematic and costly to the company in terms of disposal. R.C. McEntire discovered that the waste could be fed to cattle and Long Branch Farms, a cattle farm, thus evolved as a means of disposing of the waste.

On June 21, 1993, fourteen year old Wynonie Q. Simons (Wynonie) was killed while operating a forklift at Long Branch. He had been hired to work on the farm only a week to ten days prior to his death.

Simons filed this wrongful death and survival action alleging his son, Wynonie, was killed while operating the forklift without proper instruction, supervision, or safety features. Long Branch answered asserting, among other things, the matter fell within the purview of the Workers' Compensation Act and, therefore, the circuit court lacked subject matter jurisdiction to hear the case. Thereafter, Long Branch moved to dismiss pursuant to Rule 12(b)(1), SCRCP, on the ground the Workers' Compensation Act afforded the exclusive remedy. The circuit court agreed and dismissed the case. Simons appealed the dismissal, and this court reversed and remanded for further proceedings, finding the evidence insufficient at that stage to determine whether an agricultural exemption applied to remove Wynonie from the Act. *Simons v. Longbranch Farms, Inc.*, Op. No. 97–UP–301 (S.C. Ct.App. filed May 12, 1997).

On remand, Long Branch renewed its motion to dismiss and requested an evidentiary hearing on the jurisdictional issue. Long Branch asserted the circuit court lacked subject matter jurisdiction, because any remedy provided to Simons was within the exclusive jurisdiction of the workers' compensation Act. Simons opposed the motion asserting: (1) Wynonie was an agricultural employee and therefore exempt from workers' compensation coverage by virtue of S.C.Code Ann. § 42–1–360(5) and (2) (1985) Long Branch failed to obtain workers' compensation coverage and therefore, pursuant to S.C.Code Ann. § 42–5–40 (1985), could not claim exclusivity of the Act.

The issues were bifurcated and, in March 1998, the circuit court held an evidentiary hearing on the issue of whether Wynonie was an agricultural employee. By order dated April 10, 1998, the circuit court determined Wynonie was not an agricultural employee within the meaning of the Act. Subsequently, the circuit court held a hearing on the remaining issue and determined Long Branch provided workers' compensation coverage through a policy issued to R.C. McEntire, Inc., and thus was not precluded from claiming exclusivity of the Act pursuant to § 42–5–40. Accordingly, the circuit court found Simons' exclusive remedy fell under the Workers' Compensation Act and dismissed the case for lack of subject matter jurisdiction.

## LAW/ANALYSIS

Simons raises two issues on appeal. He contends the circuit court erred in determining Long Branch complied with the provisions of S.C. Code Ann. § 42–5–20 by providing workers' compensation coverage through a policy issued to R.C. McEntire. He further asserts the circuit court erred in ruling Wynonie was not an agricultural employee, which would exempt him from coverage under the Act pursuant to S.C. Code Ann. § 42–1–360(5) (1985). We agree with Simons that Wynonie was an agricultural employee and, thus, was exempt from inclusion within the Workers' Compensation Act.

Where jurisdictional issues under the Workers' Compensation Act are involved, our review is governed by the preponderance of the evidence standard. *S.C. Workers' Comp. Comm'n v. Ray Covington Realtors, Inc.*, 318 S.C. 546,

459 S.E.2d 302 (1995). This court has the power and duty to consider all the evidence and reach our own conclusion. *Dawkins v. Capitol Constr. Co.*, 250 S.C. 406, 158 S.E.2d 651 (1967).

Simons argues that Wynonie was an agricultural employee exempt from the Workers' Compensation Act by § 42–1–360. This section provides in pertinent part:

This Title shall not apply to:

\* \* \*

(5) Agricultural employees; unless the agricultural employer voluntarily elects to be bound by this Title, as provided by § 42–1–380.[1]

S.C.Code Ann. § 42–1–360(5) (1985).

The circuit court found, because Long Branch was an essential and integral part of the operation of R.C. McEntire, Wynonie was not an agricultural employee within the meaning of the Workers' Compensation Act. We disagree.

The term agriculture is defined as "the science or art of cultivating the soil, producing crops and raising livestock and in varying degrees the preparation of these products for man's use and their disposal." *Webster's Ninth New Collegiate Dictionary* 65 (9th ed.1990). The general definition of agriculture "includes the rearing, feeding, and management of livestock." 4 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 75.03[1] (1999).

Controversial cases involving the scope of an agricultural employment exemption tend to fall into two categories: (1) those involving the classification of activities performed in the employment between old-fashioned farming and commercial production or processing related to agricultural commodities and (2) those which involve employees whose work shifts between agricultural and nonagricultural pursuits. *Id.*

Some agricultural activities may be merely one stage in a commercial operation. However, in all such cases, the decisive question is the nature, not of the employer's business, but of the employee's employment. 4 Larson, *supra* § 75.03[2]

---

1. Long Branch does not contend it was an agricultural employer that elected to be bound by the Act, but rather that it was not an agricultural employer.

(1999). Thus, if the employee's work is agricultural in nature, it is no less so because the employer happens to be engaged in another form of business. *Id.*

 The focus of an agricultural exemption is the status of the employee, not the total activities of the employer. *J & C Poultry v. Reyes–Guzman,* 227 Ga.App. 731, 489 S.E.2d 853 (1997). The nature of the employment of the employee must be determined from the whole character of his employment, and coverage is dependent upon the character of the work he is hired to perform, not upon the nature and scope of the employer's business. *Rieheman v. Cornerstone Seeds, Inc.,* 671 N.E.2d 489 (Ind.Ct.App.1996). Only when the character of the employee's work is ambiguous are the scales tipped by the nature of the employer's business. 4 Larson, *supra* § 75.03[2] (1999). Further, if an employee is generally engaged in ordinary farming duties, he does not leave the exempted class by engaging in other activities that are associated with the normal routine of running a farm. 4 Larson, *supra* § 75.04 (1999).

 In the case at hand, the preponderance of the evidence shows the nature of Wynonie's employment was agricultural. Carl Howard, who ran the farm, testified that on the day Wynonie was hired, he instructed Wynonie and another boy to mow the lawn and use a weed-eater around a mobile home on the property. Other than this one occasion, however, Howard could not recall what work Wynonie performed on the farm. Howard further testified everyone who worked on the farm "had the responsibility to . . . do everything that [had] to be done there." Employee Terry Bennett testified Wynonie's job activities included feeding the cattle, cleaning the stalls, and performing whatever chores that needed to be done. Larry Skinner, another young boy who worked alongside Wynonie, testified Wynonie drove tractors, pulled feeders and fed the cattle. On the day Wynonie was killed, the two of them were on their way to perform the work they were instructed to do by their supervisor.

## CONCLUSION

We find the lower court erroneously relied on the nature of the employer's business instead of the nature of Wynonie's

employment. The whole character of Wynonie's employment was clearly agricultural in nature, and any incidental activities he was involved in were associated with the normal routine of running a farm. Based on the evidence of record, we hold Wynonie was an agricultural employee within the meaning of the Workers' Compensation Act, and thus was exempt from coverage pursuant to § 42–1–360(5). Because we find Wynonie was exempt from the Act on this basis, we need not address the remaining issue raised by Simons.

**REVERSED AND REMANDED.** .

CONNOR and HOWARD, JJ., concur.