682 S.E.2d 516

**Joann FREDRICK, Appellant,**

v.

**WELLMAN, INC., Self–Insured Employer, Respondent.**

No. 4599.

Court of Appeals of South Carolina.

Heard April 22, 2009.

Decided July 28, 2009.

Rehearing Denied Sept. 17, 2009.

Stephen J. Wukela, of Florence, for appellant.

Kirsten L. Barr, of Mt. Pleasant, for respondent.

GEATHERS, J.

Appellant Joann Fredrick challenges a circuit court order upholding a determination of the Appellate Panel of the Workers' Compensation Commission that Fredrick is not entitled to benefits because she concealed her history of back problems when seeking employment with Respondent Wellman, Inc.[1] We affirm.

## FACTS/PROCEDURAL HISTORY

Beginning in 1991, Fredrick worked for Wellman as a spinning operator for approximately thirteen years. During the latter part of this time period, Fredrick began seeking treatment for lower back pain from her family physician, Dr. Jerry Crosby. Dr. Crosby's December 2, 1998 office notes indicate that Fredrick reported problems with lower back pain, which she attributed to being shot in the chest several years earlier and having the bullet lodge near her lower spine. The notes also indicate Fredrick complained of occasional radiation down her right lower extremity. Dr. Crosby diagnosed Fredrick with lower back pain and prescribed medication for the pain. In subsequent visits to Dr. Crosby, Fredrick continued complaining of pain in her right leg and lower back. Dr. Crosby then referred Fredrick to Dr. Gregory Jones for further treatment.

Dr. Jones' June 4, 1999 notes indicate that Fredrick complained of worsening right leg sciatica and lower back pain. The notes also indicate that Fredrick had a lengthy history of lower back pain after a bullet from a gunshot lodged in her lower lumbar region. Dr. Jones recommended Fredrick undergo an MRI scan. On June 12, 1999, Fredrick underwent a lumbar spine MRI that revealed a disc herniation at the L4/L5 location of the spine. On August 26, 1999, Fredrick underwent a right L4/L5 lumbar epidural steroid injection, but she experienced a recurrence of pain several days later.

In early 2004, Wellman laid off several employees, including Fredrick. In August 2004, however, Wellman rehired Fredrick and placed her in the position of "blender-operator,"

---

1. Wellman is self-insured as permitted by S.C.Code Ann. § 42–5–20 (Supp.2008).

which required heavy lifting, bending, and twisting, unlike her previous position as a spinning operator. During the hiring process, Wellman gave Fredrick a conditional offer of employment and then required her to complete a medical history form. The form included the following language:

Wellman, Inc. requires post-offer medical examinations which are given to all employees in a particular category of employees, after an offer of employment has been made, but prior to the time an employee begins work for Wellman, Inc. The results of this medical examination will not be used to exclude an employee from his or her particular position unless the results reveal the employee does not satisfy the employment criteria for the position, and Wellman, Inc. can only provide a reasonable accommodation which will allow the employee to perform the essential functions of the job.

The form also included the following question: "HAVE YOU HAD BACK TROUBLE OF ANY KIND?" Fredrick responded "NO."

Subsequently, on October 18, 2005, Fredrick was at work when she and a coworker tried to lift a box onto a stand and, as a result, a roll of plastic fell from the stand. When Fredrick attempted to "grab" the roll and lift it back to the stand, she immediately felt a sudden onset of pain in her back. On November 15, 2005, Fredrick sought treatment from Dr. Anthony Alexander, complaining of lower back pain with radiation into the right leg. On January 19, 2006, Fredrick filed a written claim for workers' compensation benefits (Form 50), alleging she had injured her back and legs during the October 18 incident.

Wellman's answer to Fredrick's claim (Form 51) admitted minor lower back injury but denied any injury to either leg.[2] Under item 11 of Form 51, which allows the employer to set forth further contentions or grounds of defense, Wellman stated it reserved the right to amend the completed form. Wellman began paying temporary benefits to Fredrick on February 28, 2006 while it investigated her claim.

---

**2.** South Carolina Code Regs. 67–203 (Supp.2008) requires the employer to file Form 51, Employer's Answer to Request for Hearing, when it seeks to file a response to the employee's notice of claim or request for a hearing.

After months of conservative treatment failed to relieve Fredrick's pain, Dr. Alexander referred her to Dr. W.S. Edwards, Jr., for a surgical consultation on March 14, 2006. Fredrick indicated that she wanted to proceed with surgery as soon as possible, and the surgery was scheduled for July 24, 2006. In the interim, Fredrick reconsidered her decision to have the surgery due to the risks involved.[3] On July 11, 2006, Fredrick called Dr. Edwards' office to advise him that she wanted to cancel the surgery.

On August 1, 2006, Wellman filed a written request for a hearing to (1) terminate temporary compensation based on Fredrick's refusal of medical treatment; (2) determine the issue of permanent compensation; and (3) request credit for overpayment of temporary compensation (Form 21).[4] Wellman indicated on the Form 21 that the issue of "permanent loss of use (if any)" was ripe for determination. Wellman also indicated that it was going to suspend temporary compensation on August 3, 2006.

A hearing was originally scheduled for October 3, 2006. On September 18, 2006, Wellman filed a prehearing brief (Form 58) indicating that the issues to be determined at the upcoming hearing were (1) whether Fredrick's claim should be barred due to her concealment of her history of back problems prior to beginning her position as a blender-operator with Wellman; and (2) whether Fredrick's refusal of medical treatment, namely, the surgery offered by Dr. Edwards, was unreasonable.

Fredrick failed to appear at the October 3 hearing, but counsel for both parties participated in a prehearing conference conducted by the single commissioner, which included discussion of Wellman's fraud defense. The single commissioner rescheduled the hearing for November 15, 2006. Ac-

---

3. In 2001, Fredrick learned that she had AIDS. Therefore, after consulting with Dr. Edwards about the surgery option, she became concerned about her increased risk of infection from the surgery.

4. South Carolina Code Regs. 67–208(C) (Supp.2008) requires an employer to file a Form 21, Employer's Request for Hearing, when the employer seeks a hearing for permission to terminate temporary compensation after the expiration of 150 days from the employer's notice of the injury. Form 21 sets forth a checklist of alternative reasons for the employer's hearing request.

cording to Wellman's counsel, on October 31, 2006, Wellman advised Fredrick and the Commission that it would rely on its previously filed prehearing brief, which indicated Wellman was asserting fraud as a defense.

After the November 15 hearing, the single commissioner issued a written decision denying Fredrick's claim for benefits due to her concealment of her prior back problems when she applied for the blender-operator position with Wellman. The single commissioner did not address the issue of Fredrick's refusal of medical treatment. The Commission's Appellate Panel adopted the single commissioner's findings of fact and rulings of law and incorporated the single commissioner's decision into its order. The circuit court affirmed the Appellate Panel's decision and specifically concluded that Wellman was not aware of Fredrick's concealment of her prior back problems until it reviewed medical records that had been subpoenaed during the discovery process of the case. Neither the Appellate Panel nor the circuit court addressed the issue of Fredrick's refusal of medical treatment. This appeal followed.

## ISSUES ON APPEAL

1. Was Wellman's fraud defense properly before the single commissioner during the November 15, 2006 hearing?
2. Does the evidence support the Appellate Panel's findings on the elements of Wellman's fraud defense? [5]

## STANDARD OF REVIEW

I. *Propriety of fraud defense*

■ The South Carolina Administrative Procedures Act establishes the standard for judicial review of decisions by the Appellate Panel of the Workers' Compensation Commission. *See Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 134–35, 276 S.E.2d 304,

---

5. Because we affirm the circuit court on both of these issues, we need not reach the third issue raised by Fredrick on appeal—whether Fredrick was justified in refusing medical treatment. *See Whiteside v. Cherokee County Sch. Dist. No. One*, 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (holding that the appellate court need not address the remaining issues of an appeal when the resolution of a prior issue is dispositive).

306 (1981). Specifically, South Carolina Code Section 1–23–380 (Supp.2008) provides that this Court may reverse when the decision is affected by an error of law. *See Hamilton v. Bob Bennett Ford,* 336 S.C. 72, 76, 518 S.E.2d 599, 600–01 (Ct.App.1999) (interpreting section 1–23–380), *modified on other grounds,* 339 S.C. 68, 528 S.E.2d 667 (2000).

## II. *Findings on elements of fraud defense*

 Because Wellman asserts that Fredrick's concealment of her prior back problems vitiated their employment relationship, we review the Appellate Panel's findings on the relationship's existence according to our own view of the preponderance of the evidence. *See Brayboy v. WorkForce,* 681 S.E.2d 567 (S.C.2009) (Shearouse Adv. Sh. No. 28 at 33, 36) (citing *Glass v. Dow Chem. Co.,* 325 S.C. 198, 201–02, 482 S.E.2d 49, 51 (1997); *Vines v. Champion Bldg. Prods.,* 315 S.C. 13, 16, 431 S.E.2d 585, 586 (1993); *Givens v. Steel Structures, Inc.,* 279 S.C. 12, 13, 301 S.E.2d 545, 546 (1983); *Cooper v. McDevitt & St. Co.,* 260 S.C. 463, 466, 196 S.E.2d 833, 834 (1973); *Chavis v. Watkins,* 256 S.C. 30, 32, 180 S.E.2d 648, 649 (1971); and Hon. Jean Hoefer Toal et al., Appellate Practice in South Carolina 170 (2d ed. 2002)) ("The existence of an employment relationship is a jurisdictional issue for purposes of workers' compensation benefits reviewable under the preponderance of the evidence standard of review."). In *Brayboy,* our Supreme Court applied the preponderance of the evidence standard of review to an employer's assertion that the employment relationship had been vitiated by the employee's fraud in his employment application. *Id.* at 34, 36–38, 180 S.E.2d 648.[6] However, even under this broad standard of review, the final determination of witness credibility is usually reserved to the Appellate Panel. *Dawkins v. Jordan,* 341 S.C. 434, 441, 534 S.E.2d 700, 704 (2000); *Hernandez–Zuniga v. Tickle,* 374 S.C. 235, 243–44, 647 S.E.2d 691, 695 (Ct.App.2007).

---

6. In a previous case, *Jones v. Georgia–Pacific Corp.,* 355 S.C. 413, 416–19, 586 S.E.2d 111, 113–14(2003), the Supreme Court applied the substantial evidence standard of review to the issue of whether an employee's claim was barred due to her fraud in completing an employment application. We note that in the instant case, the evidence allows us to affirm the Appellate Panel's findings under either the preponderance of the evidence standard or the substantial evidence standard.

## LAW/ANALYSIS

Fredrick challenges the circuit court's order, which upheld the denial of benefits, on three grounds: (1) Wellman's fraud defense was not properly before the single commissioner at the November 15, 2006 hearing; (2) the evidence does not support the Appellate Panel's findings on the elements of the fraud defense; and (3) her refusal of medical treatment was justified. We conclude that Wellman's fraud defense was properly before the single commissioner at the November 15, 2006 hearing. We further conclude that the evidence supports the Appellate Panel's findings on the elements of Wellman's fraud defense. Therefore, we need not reach the issue of whether Fredrick was justified in refusing medical treatment. *See Whiteside v. Cherokee County Sch. Dist. No. One*, 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (holding that the appellate court need not address the remaining issues of an appeal when the resolution of a prior issue is dispositive).

### I. *Propriety of fraud defense*

Fredrick asserts that Wellman's fraud defense was not properly before the single commissioner at the November 15, 2006 hearing because (1) the fraud defense was time-barred due to Wellman's failure to assert this defense within 150 days from the date the injury was first reported, as allegedly required by S.C.Code Ann. § 42–9–260 (Supp.2008); and (2) Wellman failed to raise the fraud defense in its Form 21, Employer's Request for Hearing, which Wellman filed on August 1, 2006. We disagree.

### A. *Whether fraud defense was time-barred*

Section 42–9–260 authorizes separate sets of procedures for terminating or suspending temporary disability payments. The particular set of procedures to be applied depends on the time that has passed since the injury was first reported. Within 150 days after the injury was first reported, the payments may be suspended or terminated **immediately** without a prior hearing, and the employee may later request a hearing to have the payments reinstated. S.C.Code Ann. § 42–9–260(B) and (C) (Supp.2008) (emphasis added). However, after 150 days have expired, an evidentiary hearing **must** be

18

provided to the recipient **before** payments may be terminated or suspended. S.C.Code Ann. § 42–9–260(F) (Supp.2008) (emphasis added). In any event, an employer may **request** a hearing **at any time** to address termination or reduction of temporary disability payments. S.C.Code Ann. § 42–9–260(E) (Supp.2008) (emphasis added).

South Carolina Code Regs. 67–504, –505, and –506 (Supp. 2008) implement the procedures authorized by S.C.Code Ann. § 42–9–260 (Supp.2008). Regs. 67–504 governs the termination of temporary compensation **during the first 150 days** after the employer's notice of the injury. Regs. 67–505 governs the suspension of temporary compensation **after the first 150 days,** and Regs. 67–506 governs the termination of temporary compensation **after the first 150 days.** Further, South Carolina Code Regs. 67–208(C) (Supp.2008) requires an employer to file a Form 21, Employer's Request for Hearing, when the employer seeks a hearing for permission to terminate temporary compensation after the expiration of the first 150 days pursuant to 25A S.C.Code Ann. Regs. 67–506 (Supp. 2008). Form 21 sets forth a checklist of alternative reasons for the employer's hearing request.

██ Fredrick argues that once 150 days from the first report of injury have expired, payments may be terminated or suspended for only those reasons set forth in Regs. 67–505 and –506 and Form 21. Fredrick claims that Wellman could not terminate her benefits on the ground of employee fraud because such a ground is not specifically enumerated in Regs. 67–505 or –506 or in Form 21 as a reason for suspension or termination of benefits. However, South Carolina Code Section 42–9–260(F) (Supp.2008) allows suspension or termination of payments after the 150 days have expired for any cause:

> After the one-hundred-fifty-day period has expired, the [C]ommission shall provide by regulation the method and procedure by which benefits may be suspended or terminated **for any cause,** but the regulation must provide for an evidentiary hearing and [C]ommission approval prior to termination or suspension unless such prior hearing is expressly waived in writing by the recipient or the circumstances identified in Section 42–9–260(B)(1) or (B)(2) are present.

(emphasis added). Therefore, the fact that Regs. 67–505, –506 and Form 21 list only certain grounds for termination or suspension of payments is more of a curiosity than a binding statement of exclusive grounds for termination or suspension of payments—it is beyond question that the plain language of the enabling statute is controlling. *See S.C. Coastal Conservation League v. S.C. Dep't of Health and Envtl. Control,* 380 S.C. 349, 375, 669 S.E.2d 899, 912 (Ct.App.2008) (holding that administrative agencies' regulations cannot conflict with or alter the statute conferring authority). Because South Carolina Code Section 42–9–260(F) permits an employer to terminate benefits for any cause after the expiration of the 150 days, Wellman's fraud defense was properly before the single commissioner at the November 15 hearing.

B. *Omission of fraud defense from Form 21*

■ Fredrick also argues that even if the fraud defense could still be raised after the expiration of 150 days from the first report of injury, the omission of Wellman's fraud defense from its Form 21, Employer's Request for Hearing, precluded the single commissioner from considering the defense at the November 15 hearing. We disagree.

South Carolina Code Regs. 67–208(C) (Supp.2008) requires an employer to file a Form 21 when the employer seeks a hearing for permission to terminate temporary compensation after the expiration of 150 days from notice of the employee's injury pursuant to 25A S.C.Code Ann. Regs. 67–506 (Supp. 2008). Further, South Carolina Code Section 42–9–260(E) allows an employer to request such a hearing **at any time.**

Here, Wellman filed its Form 21 on August 1, 2006. The Form 21 request for a hearing on termination of temporary compensation was based solely on Fredrick's refusal of medical treatment—Fredrick's concealment of her prior back condition is the very reason Wellman did not discover the prior condition until after it filed its Form 21. In any event, Wellman's prehearing brief, which was filed on September 18, 2006, ultimately provided Fredrick and the Commission with almost two months advance notice that Wellman was **seeking a hearing on its fraud defense** as well.[7]

7. Although the hearing on Wellman's request to terminate temporary compensation was originally scheduled for October 3, 2006, the hearing

Further, Wellman had reserved the right to amend its Form 51 Answer, and the prehearing brief effectively amended the Answer. Moreover, on October 3, the single commissioner and counsel for both parties discussed Wellman's assertion of the fraud defense, and on October 31, Wellman advised Fredrick and the Commission that it would rely on its previously filed prehearing brief. Therefore, Fredrick was provided with ample notice that Wellman intended to raise the fraud defense at the November 15 hearing.

Based on the foregoing, Wellman's fraud defense was properly before the single commissioner at the November 15 hearing.

## II. *Findings on elements of fraud defense*

Fredrick argues that the Appellate Panel and the circuit court erred in finding that the evidence supported the elements of Wellman's fraud defense. We disagree.

■ An employee's false statement in an employment application will bar workers' compensation benefits when: (1) the employee knowingly and willfully made a false representation as to his physical condition; (2) the employer relied upon the false representation and this reliance was a substantial factor in the hiring; and (3) there was a causal connection between the false representation and the injury. *Cooper,* 260 S.C. at 468, 196 S.E.2d at 835. Here, there is ample evidence to support the Appellate Panel's findings on the *Cooper* elements.

### A. *Knowing False Representation*

■ The evidence in the record supports the Appellate Panel's finding that Fredrick knowingly falsified her preemployment medical questionnaire as to her previous back problems. Fredrick's medical records from December 1998 to September 1999 show she received significant testing and treatment for lower back pain and a disc herniation. However, the medical history form she completed for Wellman in 2004 indicated she had no prior back problems—she responded "NO" to the question "HAVE YOU HAD BACK TROU-

---

was continued to November 15 because Fredrick failed to appear on October 3.

BLE OF ANY KIND?" Additionally, none of the past injuries or illnesses that she, in fact, listed on the form could have reasonably alerted a prospective employer to any impact on her spine. Likewise, Fredrick confirmed her written responses on the form when questioned by a staff nurse at Wellman. Further, there is no credible evidence in the record that indicates Fredrick had significant memory problems when she completed the form or that otherwise explains the appearance of deception on Fredrick's part. Therefore, the record as a whole supports the Appellate Panel's finding that Fredrick knew she was concealing the truth from Wellman when she completed the medical history form.

### B. *Employer's Reliance*

■ Fredrick argues that because she completed her medical history form after she had been hired, Wellman could not have relied on the form in hiring her and that, therefore, there could be no fraud as a matter of law. However, Wellman's use of the phrase "conditional offer of employment" on the front of its medical history form indicates an intent to condition the offer of employment for a specific position on the results of a medical examination:

> The results of this medical examination will not be used to exclude an employee from his or her particular position **unless the results reveal the employee does not satisfy the employment criteria for the position,** and Wellman, Inc. can only provide a reasonable accommodation which will allow the employee to perform the essential functions of the job.
>
> . . .
>
> DO NOT COMPLETE UNTIL A **CONDITIONAL** OFFER OF EMPLOYMENT HAS BEEN MADE[.]

(emphasis added). Thus, Wellman's reliance on the medical history form was undoubtedly a substantial factor in hiring Fredrick for the specific position in which she was placed. In fact, Wellman's Human Resources Representative, Eugene Carmichael, stated that if Fredrick had revealed her back problems, he would have checked to see if there was another open position in the plant that she was capable of filling. He also testified that a blender-operator was required to do

repetitive lifting of 50 pounds and that there were not many reasonable accommodations that Wellman could make for someone with a history of lower back problems. Further, Linda Parsons, a staff nurse for Wellman, testified that if Fredrick had revealed her history of treatment for lower back problems, Parsons would not have cleared Fredrick to work as a blender-operator without a further investigation.

Based on the foregoing, the Appellate Panel properly found that Wellman relied on the misrepresentation Fredrick made after she received the conditional offer of employment and that it was a substantial factor in her hiring.

## C. *Causal Connection*

Additional testimony from Parsons and Carmichael supported the Appellate Panel's finding that there was a causal connection between Fredrick's concealment of her condition and her injury. The testimony of both witnesses established that Fredrick would not have been exposed to the risks of lifting heavy objects and would not have been in the position to be injured had she been truthful about her medical history. Additionally, Fredrick's treating physician, Dr. W.S. Edwards, Jr., testified that Fredrick's preexisting disc herniation was the same disc herniation for which he treated her following her October 18, 2005 work accident. He further testified that if he had been Fredrick's treating physician before Wellman rehired her, he would have recommended she avoid any work requiring repetitive bending, lifting, twisting, or turning.

As to the determination of witness credibility, the single commissioner found that Fredrick was not credible, and the Appellate Panel adopted that finding. In contrast, the single commissioner implicitly found Dr. Edwards, Linda Parsons, and Eugene Carmichael to be credible and used the testimony of those witnesses to support her findings.

Based on the foregoing, the evidence supports the Appellate Panel's findings on the elements of Wellman's fraud defense. Therefore, we affirm the Appellate Panel's findings.

## CONCLUSION

Accordingly, the circuit court's order upholding the Appellate Panel's findings of fact and conclusions of law is

**AFFIRMED.**

SHORT and THOMAS, JJ., concur.